UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ATLANTIC HOME HEALTH CARE, LLC, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>WYNWEST ADVANCE LLC,<br><br>                    Defendant. | Case No.  25-cv-04365-RFL<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 4 |

Finding itself in financial straits, Atlantic entered into three cash advance agreements with Wynwest.  Under the agreements, Atlantic sold its receivables to Wynwest in exchange for a discounted lump sum.  Atlantic would then pay back the full value of its sold receivables in weekly installments and with Atlantic's payment obligation secured by its receivables.  Dissatisfied with the terms of the agreements, Atlantic commenced this action, alleging, among other things, that Wynwest charged usurious interest rates under the agreements.  Wynwest now moves to compel arbitration.  (*See* Dkt. No. 4 (the "Motion").)[1]  For the reasons set forth below, the Motion is **GRANTED**.  This Order assumes that the reader is familiar with the facts of the case, the applicable legal standards, and the Parties' arguments.

  A.    **The Delegation Clause Is Not Unconscionable**

Atlantic does not dispute that it entered into the agreements, and the Parties agree that the agreements delegate the question of arbitrability to an arbitrator.  This Order, therefore, need address only the enforceability of the delegation clause.  *See Brennan v. Opus Bank*, 796 F.3d

---

[1] All citations to page numbers in filings on the docket refer to ECF page numbers.

1125, 1132 (9th Cir. 2015).  Atlantic argues that the agreements' delegation clauses are unenforceable as unconscionable.  "The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015) (emphasis and citation omitted).  Courts apply a "sliding scale" approach in evaluating procedural and substantive unconscionability, where "more of one kind mitigates how much of the other kind is needed" to render an agreement unconscionable.  *See De La Torre v. CashCall, Inc.*, 5 Cal. 5th 966, 982 (2018) (citations omitted).  "As the party asserting unconscionability as a defense to the enforcement of the arbitration agreement, [Atlantic] bears the burden of proving unconscionability." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024) (citation omitted).

   ***Procedural unconscionability.***  Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *See OTO LLC v. Kho*, 8 Cal. 5th 111, 125 (2019) (citation omitted).  The lack of an ability to opt out of the agreements' arbitration provisions does present at least some minor procedural unconscionability.  *See, e.g.*, *Brown v. Quantcast Corp.*, No. 19-cv-05773-EMC, 2019 WL 6727503, at *4 (N.D. Cal. Dec. 11, 2019); *Brookdale Inn & Spa v. Certain Underwriters at Lloyds, London*, No. 13-cv-02559-EJD, 2014 WL 116442, at *3 (N.D. Cal. Jan. 13, 2014).  However, the overall level of procedural unconscionability is low.

   Atlantic asserts that it suffered oppression due to unequal bargaining power, as Wynwest unilaterally set the terms of the agreements without providing Atlantic an opportunity to negotiate.  But these are commercial agreements that were alleged to have involved millions of dollars in receivables.  This is not a consumer context in which buyers making routine purchases are offered lengthy adhesive contracts that they likely lack the time and opportunity to review. *Cf. Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1200-01 (9th Cir. 2024) (rejecting unconscionability challenge based on purported lack of sophistication where plaintiffs were not "unsophisticated consumers" but were instead "sophisticated" businesses).  Atlantic offers no

2

evidence, beyond conclusory statements in the verified complaint, as to why it could not have sought to negotiate or, if it was displeased with the terms, sought another vendor. Although Atlantic observes that the agreement had an exclusivity provision that required Atlantic to obtain Wynwest's consent if Atlantic wished to sell receivables to another vendor, that provision would not have prevented Atlantic from exploring contracts with other vendors in November 2024, when it entered into the first agreement with Wynwest containing an arbitration provision.

Atlantic also presents insufficient basis for a finding of surprise based on Wynwest "embedd[ing]" the arbitration provisions "deeply within prolix agreements consisting of more than two dozen pages and thousands of words." (*See* Dkt. No. 8 at 9.) Atlantic does not explain why it lacked sufficient time to read the terms of the commercial contracts at issue, or why the presence of an arbitration provision was surprising. *See, e.g.*, *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023) (no surprise where, among other things, "the pre-arbitration dispute resolution procedures are not . . . beyond the reasonable expectation of the user"). Further, the arbitration provisions appear in sections titled "Arbitration" in bold, rendering them conspicuous. *See, e.g.*, *Callahan v. Paychex N. Am. Inc.*, No. 21-cv-05670-CRB, 2022 WL 11902205, at *5-6 (N.D. Cal. Oct. 20, 2022) (no surprise where, among other things, "[t]he arbitration provision has its own section with a bolded title").

**Substantive unconscionability.** "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Kho*, 8 Cal. 5th at 125 (citation omitted). Atlantic characterizes the agreements as one-sided because they require a party to file its arbitration demand and pay all initiation fees prior to moving to compel arbitration in court. Given that Wynwest's agreements concern advancing funds to cash-strapped businesses, Atlantic argues that Wynwest's counterparty would likely struggle to pay any such fees in most situations, leaving only Wynwest able to move to compel arbitration. But as evidenced by Wynwest's submissions, the initiation fee here amounted to $303.85, which is less than the $405 fee to commence a civil action in this District. (*See* Dkt. Nos. 10-1, 10-2.) Atlantic also submits no evidence that it could not afford to pay the arbitration

3

initiation fees in this dispute, which involves hundreds of thousands of dollars. To the contrary, Atlantic's profit and loss statements from the first quarter of 2025, which are attached to the complaint, list a net income of $276,679.69 for March 2025. (*See* Dkt. No. 1-1 at 146.) Under these circumstances, the fee requirement is not substantively unconscionable. *See, e.g.*, *In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 872 (N.D. Cal. 2024) (no substantive unconscionability where "the only fee Plaintiff will bear is the $205 filing fee" which "is less than the filing fee to bring an action in court," and "Plaintiff has not argued he cannot afford this fee").

  Atlantic next points to the lack of any provision in the agreements that permits a party to dispute the appointment of an arbitrator. Yet nothing in the arbitration provisions affirmatively prohibits a party from disputing the appointment of an arbitrator, the lack of an express term on this point is not overly harsh, and any such inability would affect Atlantic and Wynwest mutually. Further, Atlantic offers no discussion of whether the rules of the relevant arbitral forum provides for the fair selection of a neutral arbitrator.

  Atlantic also expresses concern with the relevant arbitral forum's rules that limit discovery and disclaim any required "conformity to legal rules of evidence." (*See* Dkt. No. 8 at 10.) But the rules do permit the arbitrator to allow additional discovery beyond the enumerated limitations "for good cause shown" and allow the arbitrator to address evidentiary concerns. (*See* Dkt. No. 8-1, Ex. B at Rules 9(c), 19.) Such discretionary authority satisfies any unconscionability concerns, and the rules affect Atlantic and Wynwest mutually. *See Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 506 (2024) ("Allowing the arbitrator to deviate from agreed-upon default discovery limits ensures that neither party will be unfairly hampered in pursuing a statutory claim based on circumstances that arise post-formation," and "we assume the arbitrator will act reasonably and in conformity with the law." (citation omitted)).

  Finally, Atlantic challenges the forum-selection provisions, which require arbitration to occur in New York, a forum bearing no connection to the Parties or their transactions. Yet Atlantic offers no argument or evidence explaining why "the forum selected would be

4

unavailable or unable to accomplish substantial justice" or why proceeding in New York would be "so gravely difficult and inconvenient that [Atlantic] will for all practical purposes be deprived of [its] day in court." *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1027, 1029 (9th Cir. 2016) (citations omitted). Indeed, the arbitration provisions expressly permit remote attendance at all hearings, thereby countering any potential assertions of difficulty and inconvenience. (*See, e.g.*, Dkt. No. 4-2 at 28.) That Wynwest's counsel works in New York does not compel a different conclusion; the unconscionability analysis focuses on "whether a contract provision was unconscionable *at the time it was made*," and the Parties entered into the agreements before counsel began representing Wynwest in this action. *See Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1134 (2013) (emphasis added) (citations and quotation marks omitted).

In sum, the agreements' delegation provisions are not unconscionable. Accordingly, an arbitrator, and not this Court, must determine the arbitrability of the Parties' dispute. *See Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022).

### B. An Arbitrator, and Not This Court, Must Resolve Arguments About the Purported Unconscionability of the Arbitration Agreements Overall

Atlantic also argues that the arbitration agreements broadly (beyond just the delegation provisions) are unconscionable because they contain six purportedly problematic provisions: (1) class-action waiver; (2) one-sided counterclaim waiver; (3) jury waiver; (4) one-sided 20-day deadline to dispute arbitrability upon receipt of an arbitration demand; (5) one-sided fee shifting; and (6) one-sided waiver of traditional methods of service of process. Because the agreements contain an enforceable delegation clause, an arbitrator must evaluate this argument. *See Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1229 (9th Cir. 2022).

To be sure, in evaluating the unconscionability of a delegation clause, a court may look to "unrelated" provisions of an agreement (as this Order did above), but in doing so, a court should not analyze the unconscionability of the agreement as a whole; rather, "if a party cites provisions outside of the delegation clause in making an unconscionability challenge, it must explain how

5

those provisions make *the fact of an arbitrator deciding arbitrability* unconscionable." *See Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023) (citation omitted). Yet Atlantic neither argues nor explains how its six enumerated provisions implicate the unconscionability of the delegation provisions. This Order, therefore, declines to evaluate those provisions. *See, e.g.*, *Build Grp., Inc. v. Indian Harbor Ins. Co.*, No. 24-cv-03426-VC, 2025 WL 1836797, at *1 (N.D. Cal. July 3, 2025); *Jimerson v. SUN Tech. Servs., LLC*, No. 24-cv-01150-BAS, 2025 WL 1639415, at *8 (S.D. Cal. June 6, 2025).

### C.     An Arbitrator, and Not This Court, Must Resolve Arguments About Scope

The arbitration provisions permit a party to move to compel arbitration only after they first file an arbitration demand and pay any required initiation fees. Atlantic, however, received an invoice from the arbitration organization on June 17, *after* Wynwest filed the Motion. Wynwest accordingly argues that no required initiation fee was yet due at the time the Motion was filed. Atlantic nonetheless argues that the Motion must be denied because Wynwest failed to satisfy the precondition for its filing, despite the lack of an invoice for the initiation fee.

But whether Wynwest has satisfied the contractual prerequisites for arbitration by paying the filing fee after it received the invoice (but not before it filed the Motion) goes to the scope of the claims submitted. The central issue is an interpretation of the meaning of the arbitration provisions to determine whether the claims at issue fall within the scope of arbitrable claims, in light of the contractual requirements for when payment must be made. The issue does not implicate whether the Parties formed an agreement to arbitrate or agreed to delegate arbitrability, or the enforceability of the delegation provisions. Accordingly, this Order may not evaluate Atlantic's argument. *See Caremark*, 43 F.4th at 1030 ("[I]f the parties did form an agreement to arbitrate containing an enforceable delegation clause, all arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance.").

### D.     Remaining Issues

Atlantic's admissibility objections to certain statements contained within the declaration that Wynwest filed along with the Motion are **OVERRULED**. In evaluating a motion to compel

arbitration, courts apply a summary-judgment standard, which generally does not require an analysis of the admissibility of the evidence presented. *See, e.g.*, *Lomeli v. Midland Funding, LLC*, No. 19-cv-01141-LHK, 2019 WL 4695279, at *7 (N.D. Cal. Sept. 26, 2019).

Atlantic's request for judicial notice is **DENIED AS MOOT** because consideration of the documents in question would not change the analysis in this Order.

### E. Conclusion

For the foregoing reasons, the Motion is **GRANTED**. This action is **STAYED** pending resolution of arbitration. The Parties shall file a joint status report every 180 days to update the Court on the arbitration proceedings, starting from the date of this Order, and shall file a status report within 14 days of the completion of arbitration proceedings.

**IT IS SO ORDERED.**

Dated: September 9, 2025

RITA F. LIN
United States District Judge